IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMELL ISLAND, TREZELLE ISLAND and JANELL ISLAND, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 19cv01831 |
| v. | ) ) | Judge Pallmeyer |
| CHICAGO POLICE OFFICER JOY McCLAIN, STAR #4915; CHICAGO POLICE SGT. DANIEL O'TOOLE, STAR #15346; CHICAGO POLICE OFFICER MARK J. HERNANDEZ, STAR#12289; CHICAGO POLICE OFFICER JOHN M. ZINCHUK, STAR #3893; CHICAGO POLICE OFFICER RAPHAEL A. MITCHEM, STAR #6195; CHICAGO POLICE OFFICER RONALD R. NORWAY, STAR #6797; CHICAGO POLICE OFFICER ANGELA PITTMAN, STAR #8235; and THE CITY OF CHICAGO, a Municipal Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Mag. Judge Schenkier<br><br><br><br><br><br><br><br><br>JURY DEMAND |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT AT LAW

NOW COME, the PLAINTIFFS, JAMELL ISLAND, TREZELLE ISLAND and JANELL ISLAND, by and through their attorneys, LAW OFFICE OF JEFFREY J. NESLUND and MICHAEL D. ROBBINS & ASSOCIATES, and in complaining of the DEFENDANTS, CHICAGO POLICE OFFICER JOY McCLAIN, STAR #4915; CHICAGO POLICE SGT. DANIEL O'TOOLE, STAR #15346; CHICAGO POLICE OFFICER MARK J. HERNANDEZ, STAR #12289; CHICAGO POLICE OFFICER JOHN M. ZINCHUK, STAR #3893; CHICAGO POLICE OFFICER  RAPHAEL A. MITCHEM, STAR #6195; CHICAGO POLICE OFFICER RONALD R. NORWAY, STAR #6797; CHICAGO POLICE OFFICER ANGELA PITTMAN, STAR #8235; and THE CITY OF CHICAGO, a Municipal Corporation, state as follows:

1

**INTRODUCTION**

1. This is an action for civil damages brought under Illinois State law and 42 U.S.C. Sec. 1983 for the deprivation of PLAINTIFFS' constitutional rights. This Court has jurisdiction pursuant to 28 U.S.C. Sec. 1331 and 1343.

2. Venue in this district is proper pursuant to 28 U.S.C. sec. 1391 (b), because the facts which give rise to the claims asserted herein occurred in the Northern District of Illinois.

3. PLAINTIFFS, JAMELL ISLAND, TREZELLE ISLAND and JANELL ISLAND are individuals who at all times relevant hereto were present in the Northern District of Illinois.

4. DEFENDANTS, CHICAGO POLICE OFFICER JOY McCLAIN, STAR #4915; CHICAGO POLICE SGT. DANIEL O'TOOLE, STAR #15346; CHICAGO POLICE OFFICER MARK J. HERNANDEZ, STAR #12289; CHICAGO POLICE OFFICER JOHN M. ZINCHUK, STAR #3893; CHICAGO POLICE OFFICER RAPHAEL A. MITCHEM, STAR #6195; CHICAGO POLICE OFFICER RONALD R. NORWAY, STAR #6797; and CHICAGO POLICE OFFICER ANGELA PITTMAN, STAR #8235, were at all times material hereto, duly appointed Chicago Police Officers employed by the City of Chicago acting in the capacity of sworn law enforcement officials.

5. The DEFENDANT, City of Chicago (hereinafter "CITY"), at all relevant times, was an Illinois Municipal Corporation, duly chartered and organized under the Laws of the State of Illinois, located entirely within this Judicial District.

**FACTUAL SUMMARY**

6. On or about June 12, 2018, DEFENDANT OFFICER McCLAIN, under the supervisor of DEFENDANT SGT. O'TOOLE, obtained a search warrant for the first-floor apartment of a gray-sided two flat building located at 5250 S. Wells Street in Chicago.

7. The search warrant created by DEFENDANT OFFICER McCLAIN, under the supervisor of DEFENDANT SGT. O'TOOLE, contained fabricated, false and misleading information attributable to a confidential informant.

8. The search warrant created by DEFENDANT OFFICER McCLAIN, under the supervisor of DEFENDANT SGT. O'TOOLE, stated that a male black with the nickname of "Deebo" who was 35 - 40 years old, 5'07-5'08 and 250-300 lbs. with black hair with moles on his face was selling drugs out of the first-floor apartment of a gray sided two flat building located at 5250 S. Wells Street in Chicago.

9. On and before June 12, 2018, the PLAINTIFFS resided in the first-floor apartment at 5250 S. Wells Street with their mother.

10. DEFENDANT OFFICERS JOY McCLAIN, STAR #4915; CHICAGO POLICE OFFICER MARK J. HERNANDEZ, STAR #12289; CHICAGO POLICE OFFICER JOHN M. ZINCHUK, STAR #3893; CHICAGO POLICE OFFICER RAPHAEL A. MITCHEM, STAR #6195; CHICAGO POLICE OFFICER RONALD R. NORWAY, STAR #6797; and CHICAGO POLICE OFFICER ANGELA PITTMAN, STAR #8235 were part of a team in the narcotics division of the Chicago Police Department under the supervision of DEFENDANT SGT. DANIEL O'TOOLE.

11. The DEFENDANT OFFICERS did not have judicial authority for a "no knock" warrant for the first-floor apartment at 5250 S. Wells Street on June 12, 2018.

12. Despite the fact DEFENDANT OFFICERS MARK HERNANDEZ and JOHN M. ZINCHUK did not obtain judicial authority for a "no knock" warrant, the DEFENDANT OFFICERS broke down the front door to the PLAINTIFFS' apartment without allowing the PLAINTIFFS an opportunity to simply open the door.

13. PLAINTIFFS, JAMELL ISLAND, who is 19 years old, and his brother PLAINTIFF TREZELLE ISLAND, who is 20 years old, were in the residence in the first-floor apartment at 5250 S. Wells when the DEFENDANT OFFICERS MARK HERNANDEZ and JOHN M. ZINCHUK broke down the door of their apartment without knocking or giving the PLAINTIFFS an opportunity to open the door.

14. DEFENDANT OFFICERS entered the home, including DEFENDANT OFFICERS SGT. O'TOOLE; JOY McCLAIN; RAPHAEL A. MITCHEM; RONALD R. NORWAY; ANGELA PITTMAN; MARK HERNANDEZ and JOHN M. ZINCHUK, placed guns to the heads of JAMELL ISLAND and TREZELLE ISLAND and ordered them to get on the ground.

15. PLAINTIFF, JANELL ISLAND, who is a 20-year-old female, was in her bathroom coming out of the shower when the DEFENDANT OFFICERS broke down the door to her residence.

16. All of the PLAINTIFFS were placed into handcuffs and detained despite the fact none of the PLAINTIFFS resembled the individual "Deebo" described in the search warrant.

17. During the search of their residence, PLAINTIFFS JAMELL ISLAND and TREZELLE ISLAND were subjected to an invasive strip search by the DEFENDANT OFFICERS under the supervisor of DEFENDANT SGT. O'TOOLE.

18. The DEFENDANT OFFICERS knew they were in the wrong apartment and still conducted an unreasonable search of the PLAINTIFFS' residence, including breaking personal items, removing doors off hinges and breaking the front door of the apartment.

19. The DEFENDANT OFFICERS' search of PLAINTIFFS' home was unreasonable and excessive as the DEFENDANT OFFICERS knew the PLAINTIFFS were not the subject of

the search warrant and the DEFENDANT OFFICERS knew they were in the wrong apartment.

20. The search of PLAINTIFFS' home revealed no contraband of any kind.

21. In order to cover up the misconduct outlined above, the DEFENDANT OFFICERS fabricated official police reports, including that there was "zero damage to any property or furniture in the residence on account that no search was conducted."

## COUNT I
### (Unlawful Search)

22. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-21 above.

23. As more fully described above, DEFENDANT OFFICERS entered and searched PLAINTIFFS' home without any legal justification, in violation of the Fourth Amendment to the United States' Constitution.

24. As a direct and proximate result of the illegal search of PLAINTIFFS' home, they have suffered damages including, but not limited, to property damage, property loss and emotional distress.

## COUNT II
### (Unlawful Seizure)

25. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-21 above.

26. As more fully described above, DEFENDANT OFFICERS detained PLAINTIFFS while they unlawfully searched their home without any legal justification to do so, in violation of the Fourth Amendment to the United States' Constitution.

27. As a direct and proximate result of the illegal seizures of PLAINTIFFS' persons they have suffered damages, including, but not limited to, emotional pain and suffering.

## COUNT III
### (Supervisory Liability, Defendant O'TOOLE)

28. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-21 above.

29. As described above, DEFENDANT SGT. O'TOOLE, was present at the location when the Defendant OFFICERS broke into PLAINTIFFS' home and conducted an unlawful search of the PLAINTIFFS as well as their apartment.

30. DEFENDANT SGT. O'TOOLE was a sergeant on the Chicago Police Department, and as such, it was his responsibility to supervise the conduct of the other officers who illegally entered and searched the PLAINTIFFS' and their residence.

31. Rather than properly supervising the DEFENDANTS McCLAIN and UNKNOWN OFFICERS, DEFENDANT SGT. O'TOOLE condoned their unlawful behavior and approved of the illegal and excessive search of the PLAINTIFFS' and their residence.

32. As a direct and proximate result of DEFENDANT SGT. O'TOOLE's failure to supervise the other DEFENDANT OFFICERS, PLAINTIFFS' home was illegally entered and searched and they were detained, strip searched unlawfully, and they suffered damages, including, but not limited to, emotional pain and suffering.

## COUNT IV
### (Unreasonable Procurement of a Search Warrant)

33. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-21 above.

34. Procurement of the search warrant by DEFENDANT McCLAIN, under the supervision of DEFENDANT SGT. O'TOOLE, was unreasonable and unconstitutional for one or more of the following reasons:

(a) In order to obtain the warrant, DEFENDANTS fabricated false and misleading information in the complaint and application for the warrant;

(b) the DEFENDANTS failed to independently verify or corroborate alleged information provided by the informant prior to obtaining the warrant;

(c) the DEFENDANTS failed to conduct a search of available databases for any information connecting "Deebo" to the first-floor apartment at 5250 S. Wells Street, Chicago, Illinois;

(d) the DEFENDANTS failed to be truthful with the Assistant State's Attorney approving the warrant application and the judge issuing the warrant regarding all information provided by any alleged informant and corroboration of that information or lack thereof;

35. No reasonably well-trained police officer in the position of DEFENDANT McCLAIN would have applied for the search warrant obtained by DEFENDANT McCLAIN and it was done intentionally or with reckless disregard to the rights of PLAINTIFFS.

36. As a result of DEFENDANT McCLAIN's unreasonable procurement of the search warrant, PLAINTIFFS sustained damages including but not limited to property damage, property loss, and emotional distress.

37. The procurement of the search warrant was in violation of PLAINTIFFS' Constitutional Rights and not authorized by law. The foregoing was unnecessary, unreasonable and excessive, and in violation of PLAINTIFFS' Fourth Amendment rights under the U.S. Constitution.

## COUNT V
**(Intentional Infliction of Emotional Distress)**

38. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-21

above.

39. The invasive strip search, including cavity search, of PLAINTIFFS JAMELL ISLAND and TREZELLE ISLAND by the DEFENDANT OFFICERS, was extreme and outrageous conduct. The DEFENDANTS actions were rooted in an abuse of power and authority, and they were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

40. The misconduct described in this Count was undertaken with intent, malice, willfulness, wantonness and reckless indifference to the rights of the PLAINTIFFS, such that the DEFENDANTS' actions shock the conscience.

41. The DEFENDANT OFFICERS are or were employees of the CITY of CHICAGO and acted within the scope of their employment in committing the misconduct described herein such that the City of Chicago is liable for their actions.

42. As a result of the above-described wrongful conduct, the PLAINTIFFS have suffered financial and other damages, including but not limited to substantial mental pain and suffering.

### COUNT VI
### (*MONELL* CLAIM)

43. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-21 above.

44. At all relevant times, DEFENDANT CITY OF CHICAGO, by and through its employees and agents of the Chicago Police Department, maintained official policies, customs and practices that facilitated and condoned the DEFENDANTS' misconduct outlined above.

45. Before the illegal stirp search of the PLAINTIFFS' and the illegal search of their home and destruction of their personal property on June 12, 2018, policy makers for the City of

Chicago knew that the Chicago Police Department's policies, customs and practices for investigating, disciplining, supervising and controlling its officers and, in particular, corroborating information from informants before executing search warrants in the home of private citizens, were inadequate and caused police misconduct.

46. The actions of the DEFENDANT OFFICERS were done pursuant to one or more of the following *de facto* policies, practices and/or customs of the CITY that are so pervasive that they carry the force of law.

**A.     Failure to Investigate or Discipline Officer Misconduct**

47. The CITY has certain *de facto* policies, practices and/or customs of concealing and/or suppressing officer misconduct, including the abuse of police powers to violate the constitutional rights of citizens during the execution of search warrants.

48. Specifically, Chicago Police Officers routinely break down the doors of private residences without announcing they are the police in violation of judicial authority. It is the *de facto* policy, practice and/or custom of the Chicago Police Department to treat every search warrant as if it were a "no knock" warrant and illegally enter home and destroy personal property without first announcing that they are the police and giving residents a realistic opportunity to open the door without the police resorting to destroying property. This policy, practice and custom exceeds the judicial authority of the search warrant and places citizens as well as officers' safety at risk.

49. At all relevant times, the Chicago Police Department maintained a policy or custom of failing to investigate, discipline, supervise and control its officers and, in particular, independently corroborate alleged information obtained by informants in obtaining search warrants into private residences. By maintaining these policies or customs and practices, the DEFENDANT CITY OF CHICAGO caused its officers to believe that they could engage in

9

misconduct and illegal searches with impunity because their actions would never be thoroughly scrutinized.

50. DEFENDANT SGT. O'TOOLE has been the subject of multiple federal lawsuits regarding illegal search and seizures of citizens based on false or fabricated information obtained in search warrants. Specifically,

(a) case number 06cv00696 regarding a search warrant executed at 2321 N. Harding in Chicago on April 15, 2005;

(b) case number 09cv01958 regarding a search warrant executed at 9429 S. Loomis Street in Chicago on February 18, 2009;

(c) case number 11cv07171 regarding a search warrant executed at 6511 N. Nordica Avenue in Chicago on October 19, 2010;

(d) case number 12cv00981 regarding a search warrant executed at 4929 W. Adams Street in Chicago on February 12, 2010; and

(e) case number 12cv01422 regarding a search warrant executed at 1021 West 61st Street in Chicago on March 2, 2011.

51. All of these lawsuits either settled or went to trial with verdicts for the PLAINTIFFS and put the DEFENDANT CITY on notice that their failed policies, practices and customs regarding fabricated or falsified search warrants and DEFENDANT SGT. O'TOOLE'S involvement in such misconduct. Despite the CITY's knowledge of the City's failed policies, practices and customs, the policymakers failed to take action to remedy these problems or discipline DEFENDANT SGT. O'TOOLE.

**B. Chicago Police Failed to Maintain a Proper Early Warning System**

52. The City of Chicago has failed to maintain a proper or valid early warning system

to detect and intervene with corrective measures officers with multiple CRs and/or who exhibit patterns of potentially adverse performance, attitude and behavior.

53. DEFENDANT, CITY OF CHICAGO, failed to maintain and/or utilize a valid early warning system which would have identified DEFENDANT SGT. DANIEL O'TOOLE, STAR #15346 as an officer with repeated offenses alleged against him and led to the proper discipline, re-training, supervising or other intervention into his behavior, therefore preventing the shooting from occurring, even though DEFENDANT CITY OF CHICAGO knew or should have known that its system did not work and/or was not proper and that the failure of such would cause and could cause injury to an individual such as the PLAINTIFFS, JAMELL ISLAND, TREZELLE, ISLAND and JANELL ISLAND.

54. DEFENDANT, CITY OF CHICAGO, failed to identify the small fraction of officers with the highest numbers of CRs registered against them, despite knowing that such identification and proper retraining or discipline could prevent them from committing further acts that would cause and could cause injury to an individual such as PLAINTIFFS.

55. DEFENDANT, CITY OF CHICAGO, failed to identify the small fraction of officers with the highest number of CRs, despite knowing that such failure could cause them to feel they could act with impunity and without fear of retribution.

56. Specifically, from 2003 to 2014, DEFENDANT SGT. O'TOOLE had at least 25 illegal search complaints made against him by citizens of Chicago.

57. DEFENDANT, CITY OF CHICAGO, failed to identify and/or failed to act on the fact that that DEFENDANT SGT. DANIEL O'TOOLE, STAR #15346 was in the top fraction of officers with the highest number of CRs, despite knowing that such failure could cause DEFENDANT SGT. O'TOOLE to feel he could act with impunity and without fear of retribution

or discipline.

58. In the case of *First Midwest Bank v. City of Chicago, et al.*, 14-cv-9665 (N.D. Ill) a federal jury found the City of Chicago failed to maintain an adequate Early Warning System to identify and correct problematic behavior of officers.

59. DEFENDANT, CITY OF CHICAGO, maintained and affirmed agreements with the Chicago Police Department which limited investigative agencies such as Office of Professional Standards ("OPS") and Independent Police Review Authority's ("IPRA") ability to utilize past complaints in its investigations, hampering their ability to identify patterns in officer misconduct, despite knowing that such failure could prevent officers from committing further acts which would cause injury to individuals such as PLAINTIFFS, JAMELL ISLAND, TREZELLE, ISLAND and JANELL ISLAND.

**C. Code of Silence to Shield Officer Misconduct**

60. Finally, the CITY has a *de facto* policy, practice and/or custom known as a "code of silence" within the Chicago Police Department. This code is an implicit understanding between and among members of the CPD resulting in a refusal or failure to report instances of misconduct of which they are aware, including the abuse of police powers to violate the constitutional rights of citizens despite their obligation to do so as sworn officers. This includes police officers who remain silent or give false or misleading information during official investigations into allegations of a fellow officer related to misconduct that occurred in order to protect themselves or their fellow officers from discipline, criminal prosecution or civil liability.

61. In December 2015, Chicago Mayor Rahm Emanuel publicly acknowledged the existence of a code of silence within the Chicago Police Department. Mayor Emanuel defined this code of silence or "thin blue line," within the Chicago Police Department as "the tendency to

ignore "the tendency to deny, and in some cases, the tendency to cover up the bad actions of colleagues."

62. In the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a federal jury found that as of February 2007 "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

63. In April 2016, the City's Police Accountability Task Force ("PATF") found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

64. Individually and collectively, the above described *de facto* policies, practices and/or customs of the CITY proximately result in the culture and endemic attitude among members of the CPD, including the DEFENDANTS, CHICAGO POLICE OFFICER JOY McCLAIN, STAR #4915 and CHICAGO POLICE SGT. DANIEL O'TOOLE, STAR #15346, that they may engage in misconduct against the citizenry with impunity, and without fear of official consequence; they consider themselves "above the law."

65. The above acts/omissions of the CITY violated the PLAINTIFFS' rights under the Fourteenth Amendment to the United States Constitution.

66. The aforementioned *de facto* practices, policies, and customs of DEFENDANTS, individually and collectively, have been maintained and/or implemented with utter indifference by DEFENDANTS, and have encouraged and/or motivated DEFENDANT SGT. DANIEL O'TOOLE, STAR #15346 and DEFENDANT CHICAGO POLICE OFFICER JOY McCLAIN, STAR #4915 to commit the wrongful act against PLAINTIFFS outlined above, and therefore acted as the direct and proximate causes and moving force behind the injuries sustained by PLAINTIFFS.

13

## COUNT VII
### (State Law Claim: Indemnification)

67. PLAINTIFFS re-allege and incorporate the factual allegations in paragraphs 1-21 above.

68. In Illinois, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 735 ILCS 10/9-102.

## REQUEST FOR RELIEF

69. PLAINTIFFS, JAMELL ISLAND, TREZELLE ISLAND and JANELL ISLAND, respectfully request that the Court:

   a. Enter a judgment in their favor and against all Defendants;

   b. Award compensatory damages against all Defendants;

   c. Award attorney's fees against all Defendants;

   d. Award punitive damages against all Defendants; and

   e. Grant any other relief this Court deems just and appropriate.

## JURY DEMAND

PLAINTIFFS, JAMELL ISLAND, TREZELLE ISLAND and JANELL ISLAND, demand a trial by jury under the Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

/s/ Jeffrey J. Neslund
JEFFREY J. NESLUND
One of the Attorneys for Plaintiffs

Jeffrey J. Neslund
Law Offices of Jeffrey J. Neslund
20 North Wacker Drive, Suite 3710
Chicago, Illinois 60606
(312) 223-1100

Michael D. Robbins
Michael D. Robbins & Associates
20 North Wacker Drive, Suite 3710
Chicago, Illinois 60606
(312) 899-8000